# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

NELIN XIOMARA                                          CIVIL ACTION
GONZALEZ ELVIR, ET AL.

VERSUS                                                 NO. 16-814-SDD-EWD

TRINITY MARINE PRODUCTS, INC., ET AL.

## RULING AND ORDER

Before the Court is a Motion for Leave to Amend Complaint (the "Second Motion"),[1] and

Motion for Leave to File Revised Third Amended and Supplemental Complaint (the "Third

Motion"), filed by Nelin Xiomara Gonzalez Elvir and Estevan Lopez Coello (collectively,

"Plaintiffs"), which seek to add additional parties and claims in this matter.[2] Both Motions are

opposed.[3] Plaintiffs have filed replies in support of the Second and Third Motions.[4] Plaintiffs

have also filed a Second Motion to Substitute Revised Third Amended and Supplemental

Complaint,[5] seeking to correct jurisdictional allegations, as ordered by the Court, but also seeking

to correct other allegations in the Second and Third Motions, and seeking to add yet another party

to this case.

For the reasons that follow, the Second and Third Motions[6] are **GRANTED IN PART.**

---

[1] Plaintiffs filed their Motion for Leave to File First Amending Complaint on March 17, 2017, which was granted on June 8, 2017. R. Docs. 13, 26. On March 31, 2018, Plaintiffs filed the Second Motion, but titled it as "Motion for Leave to Amend Complaint," which seeks leave to file a *second* amended and supplemental complaint. R. Doc. 56. For ease of reference, the Court will refer to the second-filed Motion as "the Second Motion" herein.
[2] R. Doc. 103.
[3] R. Docs. 74, 80 and 84; R. Docs. 111, 118.
[4] R. Docs. 90, 138-139.
[5] R. Doc. 143.
[6] A motion for leave to amend is not among the motions expressly excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). Further, although the Fifth Circuit has not ruled on the issue, the weight of authority appears to be that motions for leave to amend are generally considered nondispositive in nature. *See, e.g., Bona Fide Demolition and Recovery, LLC v. Crosby Construction Co. of La., Inc.*, 07-3115, 2010 WL 4176858, *1 (E.D. La.

Plaintiffs' Motion for Expedited Hearing on the Third Motion[7] is **DENIED** as **MOOT**. Plaintiffs' Second Motion to Substitute Revised Third Amended and Supplemental Complaint[8] is **GRANTED IN PART.**

## I. Background

On or about October 28, 2016, Plaintiffs filed a Petition for Damages ("Petition") in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana, asserting a wrongful death claim and survival action against Trinity Marine Products, Inc. ("Trinity Marine"), Lincoln Electric Company ("Lincoln Electric"), ABC Insurance Company and DEF Insurance Company for the personal injuries and death of Jose Ariel Aguilar Gonzalez ("Mr. Gonzales"). Mr. Gonzalez, who is alleged to be Plaintiffs' adult some, was electrocuted while using equipment alleged to have been provided or manufactured by Trinity Marine and Lincoln Electric.[9] The incident occurred on October 22, 2015, while Mr. Gonzalez was performing welding work for his employer, NSC Technologies, Inc., on the premises of Trinity Marine located in Brusly, Louisiana.[10] Plaintiffs allege that at the time of the accident, Mr. Gonzalez had been instructed to use, and was in fact using, a Lincoln Electric DC 600, Code No. 11130, Sin: U 1061008593 ("Idealarc DC600" or the "Welder") as an electrical power source.[11] Plaintiffs further allege that the Welder was able to deliver, and did deliver, a lethal shock to Mr. Gonzalez because it was not equipped with a Ground Fault Circuit Interrupter ("GFCI").[12]

---

Oct. 20, 2010)(collecting cases). Accordingly, the undersigned issues a Ruling and Order on all the referenced motions, including the Second and Third Motions.
[7] R. Docs. 57, 104.
[8] R. Doc. 143.
[9] R. Doc. 1-1.
[10] *Id.* at ¶¶ II-IV.
[11] *Id.* at ¶ VI.
[12] *Id.* at ¶ XI.

Lincoln Electric removed the matter to this Court on December 2, 2016, asserting that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[13] Alternatively, Lincoln Electric asserts that the Court has federal question jurisdiction under 28 U.S.C. § 1331 based upon Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, and that the Court has original jurisdiction over Plaintiffs' maritime claims under 28 U.S.C. § 1333.[14]

<u>The Second Motion</u>

On March 31, 2018, Plaintiffs filed the pending Second Motion,[15] seeking to add Trinity Industries Services, LLC ("Trinity Industries Services") and Trinity Industries, Inc. ("Trinity Industries") as defendants in this matter pursuant to Fed. R. Civ. P. 15.[16] Although the deadline to amend pleadings and add parties in this matter was March 17, 2017,[17] Plaintiffs assert that good cause exists to allow these amendments because Plaintiffs did not learn of the existence of the additional entities until the corporate deposition of Trinity Marine on March 23, 2018.[18] Specifically, Plaintiffs allege that during the March 23, 2018 deposition, they learned that Trinity Industries Services is the entity responsible for safety training, safety inspections, OSHA compliance and other safety-related decisions and measures at the site of the underlying accident and that Trinity Industries Services is owned by Trinity Industries.[19] Plaintiffs claim that Trinity

---

[13] R. Doc. 1 at ¶ 7.

[14] *Id.* at ¶¶ 20-23.

[15] Plaintiffs' First Supplemental and Amended Complaint names Navigators Insurance Company ("Navigators"), Liberty Mutual Insurance Company ("Liberty Mutual") and Allianz Global Risks US Insurance Company ("Allianz") as defendants in place of ABC Insurance Company and DEF Insurance Company. (R. Doc. 27).

[16] R. Doc. 56.

[17] R. Doc. 12.

[18] R. Doc. 56-1.

[19] R. Doc. 56-1 at pp. 1-2. However, in their Motion to Substitute Revised Third Amending and Supplemental Complaint at R. Doc. 143, ¶¶ II-IV, Plaintiffs aver that they have ultimately determined that, despite deposition testimony to the contrary, Trinity Industries Services does not actually exist. Rather, the correct entity, as confirmed by counsel for Trinity Marine, is "Trinity Corporate Services, LLC," which Plaintiffs seek to add as a defendant in their Third Motion.

Industries Services was not mentioned in any of the documents produced by the parties during initial disclosures or discovery, was not identified in an answer to the Complaint or in any interrogatory, and no witness had testified about its existence until March 23, 2018.[20]  Plaintiffs assert that although Trinity Industries was mentioned in the November 2017 depositions of persons who worked at the facility where the underlying accident occurred, the references were made in a manner that did not suggest liability on the part of Trinity Industries at the time.[21]  Thus, Plaintiffs assert there has been no undue delay in joining Trinity Industries Services or Trinity Industries.

With respect to the good cause analysis under Rule 15, Plaintiffs assert that they do not intend to delay this matter or act in bad faith, but are attempting to join the Trinity entity that is responsible for the damages alleged in the Complaint.[22]  Plaintiffs claim that this is not an instance where they have repeatedly failed to cure pleading deficiencies and that Defendants will not be prejudiced by the amendments.  Plaintiffs also assert that the amendments are not futile because they state a claim for relief against the new parties.[23]  Thus, Plaintiffs assert that good cause exists to allow the amendments under Fed. R. Civ. P. 15.

In three separate opposition briefs, Lincoln Electric and Allianz, Trinity Marine, and Navigators assert that the Second Motion should be denied.[24]  Lincoln Electric and Allianz assert that the Second Motion should be denied because Plaintiffs have had actual or constructive knowledge of the existence of Trinity Industries Services and Trinity Industries for months and failed to act diligently during discovery to learn more about the entities' potential relevance to this

---

[20] *Id*. at pp. 2-3.
[21] *Id*. at p. 3.
[22] *Id*.
[23] *Id*.
[24] *See* R. Docs. 74, 80 and 84.

litigation.[25]   Lincoln Electric and Allianz claim that Trinity Industries was mentioned during depositions taken by Plaintiffs in November 2017 and was referenced in a document produced by Lincoln Electric on February 2, 2017[26] and in Lincoln Electric's written discovery responses, served on Plaintiffs in October 2017.  Lincoln Electric and Allianz point out that Plaintiffs filed the Second Motion nine days before the discovery cutoff and assert that the Second Motion should be denied to the extent the amendments would require reopening discovery as to Lincoln Electric or cause any further delay in this litigation.[27]   Lincoln Electric and Allianz contend that Lincoln Electric will be prejudiced by the reopening of discovery and by any delay in the litigation.[28]

In a separate opposition, Trinity Marine asserts that the Motion should be denied because Plaintiffs have failed to show good cause to amend the Scheduling Order under Fed. R. Civ. P. 16 or to allow the amendments under Fed. R. Civ. P. 15, since Plaintiffs have "possessed documents identifying the other Trinity entities since before suit was filed or, at the latest, very shortly afterwards."[29]   With respect to Plaintiffs' knowledge of the other Trinity entities, Trinity Marine points to the following: (1) the OHSA Report pertaining to the underlying accident, which has been in Plaintiffs' possession since January 26, 2017;[30] (2) Texas and Louisiana Secretary of State records available prior to the deadline for amending the pleadings;[31] (3) Trinity Marine's February 2, 2017 Initial Disclosures, which included the relevant contract between NSC Technologies, Inc. and Trinity Industries, Inc. and the Safety Policy of Trinity Marine titled "Trinity Industries, Inc. Corporate Safety Standard;"[32] (4) the fact that Plaintiffs' counsel asked questions during the

---

[25] R. Doc. 74 at pp. 1-2.
[26] *Id*. at pp. 1-2 (*citing* R. Doc. 74-1).
[27] R. Doc. 74 at p. 2.
[28] *Id*. at p. 3.
[29] R. Doc. 80 at pp. 5-6 (*citing* R. Doc. 10 and R. Doc. 80-8).
[30] R. Doc. 80 at pp. 1, 5-6 (*citing* R. Doc. 10).
[31] R. Doc. 80 at p. 6 (*citing* R. Docs. 80-8 and 80-9).
[32] R. Doc. 80 at p. 6 (*citing* R. Doc. 80-1 at pp. 5-32 and R. Doc 80-11).

November 28, 2017 depositions of former Trinity Marine employees that evidenced his full awareness of the potential involvement of other Trinity entities by that date;[33] and (5) the January 26, 2018 production by Trinity Marine of a supervisor's pay stubs containing the name "Trinity Industries" at the top.[34]

Trinity Marine also asserts that, although Plaintiffs have failed to articulate the importance of the amendments, any such argument is undercut by Plaintiffs' failure to diligently pursue their allegations against the two entities and Plaintiffs' failure to seek leave until over a year after the Court's deadline for amending the pleadings.[35] Trinity Marine likewise asserts that the amendments would be futile because they fail to allege a cause of action against the parties sought to be joined. Trinity Marine further argues that it will be prejudiced by the amendments because additional discovery will be required on the new allegations and the new parties, as the new allegations may require the retention of new liability experts by both parties.[36] Trinity Marine also asserts that the Motion should be denied because the addition of new parties will likely require a continuance of the trial.[37] For these same reasons, Trinity Marine argues that Plaintiffs cannot satisfy the good cause requirement of Fed. R. Civ. P. 15 to allow the amendments.[38]

Navigators also filed an opposition to the Motion, which "adopts by reference the arguments, exhibits, and supporting authorities" set forth in Trinity Marine's opposition.[39]

In reply, Plaintiffs maintain that they did not obtain sufficient information regarding Trinity Industries or Trinity Industries Services to justify adding them as defendants until the March 23,

---

[33] R. Doc. 80 at p. 6 (*citing* R. Docs. 80-5 and 80-6).
[34] R. Doc. 80 at p. 7 (*citing* R. Doc. 80-7 at pp. 9-10).
[35] R. Doc. 80 at pp. 7-8.
[36] R. Doc. 80 at p. 8.
[37] *Id*. at pp. 8-9 (citation omitted).
[38] *Id*. at p. 9.
[39] R. Doc. 84 at p. 1.

2018 deposition of Trinity Marine.[40]  Plaintiffs emphasize that, "if Trinity Marine Products is unable to properly identify the entity at issue, it is absurd to expect plaintiffs to have divined the identity of the entity responsible for safety policies, safety training, and so on at the Trinity Marine Products' Brusly, Louisiana site, until this new information was received."[41]

The Third Motion

On May 25, 2018, Plaintiffs filed the pending Third Motion, which seeks to (1) add Legrand North America, LLC ("Legrand"),[42] the manufacturer of the plugs that were used on the extension cords allegedly used by Mr. Gonzalez when he operated the Welder; (2) add a negligence and products liability claim against the Trinity entities that fabricated the two extension cords using Legrand's plugs; (3) add "Trinity Corporate Services, LLC, as an additional defendant;" (4) assert joint, several, and *in solido* liability among some of the Defendants; and (5) correct the name of Plaintiff Estevan Lopez Coello to "Jose Esteban Lopez Coello."[43]

Plaintiffs claim that Legrand's joinder is made necessary because of the defense experts' accident theories, which posit that the accident was caused when the male and female ends of the plugs[44] were mis-matched, which allowed "nonmatching leads" in the extension cords (made by a Trinity Defendant) to be connected to each other.[45]  The experts contend that the mis-match allegedly cause the drop light that Mr. Gonzales was using (which was plugged into extension cords that were plugged into the Welder), to become energized, which in turn caused the electric shock that killed him.[46]  One expert also contends that an "improper modification" was made to

[40] R. Doc. 86-2.
[41] *Id*. at p. 4.
[42] However, *see* discussion *infra*, regarding Plaintiffs' Revised Third Amended Complaint, which reflects that the Legrand entity they are seeking to add is actually "Legrand Holding, Inc."  R. Docs. 143 and 143-7, ¶ I, p. 3.
[43] R. Doc. 103, pp. 1-2.
[44] The documents alternately refer to the plugs as "Turnlok connectors" and "Pass Seymour" plugs. *See, e.g.*, R. Doc. 103-1, pp. 1-2 (*citing* the reports of some of Defendants' experts).
[45] R. Doc. 103-1, p. 2 (*citing* R. Doc. 103-4, p. 3, R. Doc. 103-5, p. 13).
[46] R. Doc. 103-1, pp. 1-2 (*citing* R. Doc. 103-4, p. 3, R. Doc. 103-5, p. 13).

one of the plug's grounding spades, which permitted an "abnormal connection" between the plugs.[47]  Both opine that a GFCI would not have prevented the effects of the mis-matching.[48]  Plaintiffs allege that Legrand's potential liability was not asserted in discovery responses or in initial disclosures, and that Mr. Gonzalez's supervisor testified that he did not think it was possible to improperly connect the extension cords, which did not appear defective to him.[49]  Plaintiffs thus assert that, since Defendants' experts have now raised the above theory as the cause of the accident, and the Trinity entities made and provided extension cords to workers that could be improperly modified, Plaintiffs should be allowed to join Legrand, and also assert a products liability and negligence claim against the Trinity entities that selected the plugs and made the extension cords.[50]

Plaintiffs assert that they should be allowed to add "Trinity Corporate Services, LLC" ("Trinity Corporate Services") as a defendant because they did not become aware of Trinity Corporate Services until Trinity Marine's Opposition to the Second Motion, wherein Trinity Marine asserted that Trinity Corporate Services was being "improperly named as Trinity Industries Services."[51]  Plaintiffs claim that the prior deposition testimony of Trinity Marine's corporate representative in March 2018 indicated that "Trinity Industries Services, LLC" was the Trinity entity that was responsible for safety training, inspections, and other safety-related decisions at the accident site, which is why Plaintiffs sought leave to amend to add that entity in the Second Motion, and "Trinity Corporate Services, LLC" was not identified.  Plaintiffs allege that they have undertaken "a number of efforts" to obtain the names of these entities.[52]  Plaintiffs thus want to add Trinity Corporate Services as a defendant because it is potentially liable under the same

---

[47] R. Doc. 103-1, p. 3 (*citing* R. Doc. 130-5, p. 13).
[48] R. Doc. 103-1, p. 3 (*citing* R. Doc. 104-4, p. 3, R. Doc. 103-5, pp. 13-14).
[49] R. Doc. 103-1, p. 3 (*citing* R. Doc. 103-2, p. 2 *and* R. Doc. 103-3, pp. 2-3).
[50] R. Doc. 103-1, p. 3.
[51] R. Doc. 103-1, p. 5 (*citing* R. Doc. 80, p. 1).
[52] R. Doc. 103-1, p. 6.

theories as the other Trinity Defendants.  Finally, Plaintiffs assert that, since they are seeking leave

to amend to add new defendants, they are also want to add a claim of "joint, several, and *in solido*

liability against defendants, and alternatively, joint liability of some of the defendants"

(collectively, "joint and several liability"), and want to correct the name of one of the Plaintiffs.[53]

Regarding the Rule 15 analysis, Plaintiffs assert that they have not unduly delayed since

Defendants' expert reports have only recently been produced, and they have only just become

aware of the existence of Trinity Corporate Services in Trinity's April 17, 2018 Opposition.[54]

Plaintiffs further assert that they are not acting in bad faith or with intent to delay this matter.

Rather, they seek to add Legrand since its potential liability has been raised by defense experts,

and to add Trinity Corporate Services to be certain they have joined the Trinity entity that is

responsible for Plaintiffs' alleged damages.[55]  Plaintiffs again claim that this is not an instance

where they have repeatedly failed to cure pleading deficiencies and Defendants will not be

prejudiced by the amendments.  Plaintiffs also assert that the amendments are not futile because

they state new claims for relief against the proposed new parties based on the theories of the

defense experts.[56]  Thus, for many of the same reasons previously asserted in support of their

Second Motion, Plaintiffs assert that good cause exists to allow the third round of amendments

under Fed. R. Civ. P. 15.

In two separate opposition briefs, Lincoln Electric and Allianz, and Trinity Marine, assert

that the Third Motion should be denied.  Defendants contend that Plaintiff have failed to address

Fed. R. Civ. P. 16 as the applicable standard.[57]  Lincoln Electric and Allianz dispute Plaintiffs'

---

[53] R. Doc. 103, p. 2, R. Doc. 103-1, p. 5.
[54] R. Doc. 103-1, p. 6.
[55] R. Doc. 103-1, p. 7.
[56] *Id.*
[57] R. Doc. 111 and p. 3 and R. Doc. 118 and p. 7.

contention that Plaintiffs did not become aware of the need to add Legrand, and the additional claims against Trinity Marine, until their receipt of Defendants' expert reports.[58] Rather, Lincoln Electric and Allianz contend that Plaintiffs had access to the plugs, and thus could have noticed problems with the plugs, at the parties' February 2017 inspection of the equipment.[59] They further contend that, in February and June 2017, Trinity Marine provided a list of the specifications for the parts that were to be inspected at the February 2017 inspection and produced photos of the mis-mated and damaged plugs and their packaging.[60] Further, Lincoln Electric and Allianz contend that Plaintiffs were also previously aware of the defense experts' theory of the accident because it was alluded to (1) in Lincoln Electric's October 2017 discovery responses wherein it stated it was "investigating whether the two extension cords were properly connected;" (2) at the March 2018 deposition of Lincoln Electric's corporate representative, wherein the witness testified regarding the cords and a receptacle being "damaged" and that the plug was "damaged to the point where it allowed an incorrect insertion into [the] receptacle;" and, (3) in Plaintiffs' own April 2018 expert report, wherein Plaintiffs' expert noted (in pertinent part): "extension cords…found in unreasonably poor condition…, which included physically damaged plugs & receptacles, thermal burn damages to plugs…."[61] Lincoln Electric and Allianz likewise contend that Plaintiffs have known about the existence of other Trinity entities since at least February 2017 when the parties submitted their Initial Disclosures.[62] According to these Defendants, the foregoing demonstrates

---

[58] R. Doc. 111, p. 1.
[59] R. Doc. 111, pp. 2, 4.
[60] R. Doc. 111, pp. 4-5 (*citing* R. Docs. 111-1, 111-3, and 111-4).
[61] R. Doc. 111, pp. 5-6 (*citing* R. Doc. 111-5, 111-6, p. 2 and R. Doc. 118-5).
[62] R. Doc. 111, pp. 2-3.

that Plaintiffs have not acted diligently in the discovery process and have not shown a good explanation for their failure to timely seek leave to amend.[63]

Next, Lincoln Electric and Allianz also contend that two of the other Rule 16 factors also weigh against granting Plaintiffs' Third Motion. The amendments to assert additional negligence claims against Trinity Marine are not important because such claims have already been asserted, and amending to add Legrand is not important because Plaintiffs can pursue Legrand in state court, if any of the existing Defendants is ultimately found liable to Plaintiffs.[64] Defendants contend that in this late stage of the litigation, there is no gain in fairness, efficiency, or judicial economy by adding Legrand.[65] Further, all Defendants are prejudiced by the potential amendments because they will cause the parties to have to re-open and conduct additional discovery and cause a delay to the resolution of the litigation. Further, Defendants argue prejudice in Plaintiffs delay in seeking leave to amend until after fact discovery closed and expert discovery began, despite having the requisite information to seek leave earlier.[66]

Trinity Marine's opposition brief echoes several of the arguments asserted by Lincoln Electric and Allianz. Trinity Marine also alleges that Plaintiffs have not provided a good explanation for their untimely amendments. Trinity Marine asserts that Plaintiffs' own representations and experts, and the information produced during discovery, establish that Plaintiffs were aware of the plugs and the existence of Legrand prior to the production of Defendants' expert reports. Trinity Marine specifically points to: (1) Plaintiffs' Joint Status Report

---

[63] *Id*. at pp. 3, 5. Defendants assert that Plaintiffs did not serve discovery on them, and Trinity Marine, until August 2017 and October 2017, respectively, which was well after the expiration of the deadline to amend pleadings. *Id*. at p. 5.
[64] R. Doc. 111, pp. 6-7 (*citing* R. Doc. 27 at ¶ XII). These Defendants contend that Plaintiffs interrupted prescription against Legrand when they filed suit against joint tortfeasors Lincoln Electric and Trinity Marine, if the latter two are ultimately found liable to Plaintiffs.
[65] R. Doc. 111, p. 7.
[66] R. Doc. 111, pp. 7-8.

submittal wherein Plaintiffs stated that "Plaintiffs believe there were likely other defects with the [Welder] that made it unreasonably defected (sic)….Plaintiffs also believe…other necessary safety measures were lacking;" (2) Plaintiffs' and their experts' participation in the February 2017 inspection of the equipment, including the extension cords; (3) Lincoln Electric's October 2017 discovery responses, wherein Lincoln Electric stated that the absence of GFCI protection was not related to the accident; (4) Trinity Marine's responses to written discovery and production of records regarding the equipment in the accident, which included evidence identifying the plugs, cords, and identifying Legrand; (5) the depositions of Mr. Gonzalez's supervisors, wherein Plaintiffs inquired about damaged extension cords, defects in the extension cords used by Mr. Gonzalez and how the cords were connected together with the Legrand plugs, training regarding connection of the two cords by placing the correct prongs in the correct sockets, identification of a bent prong on one of Mr. Gonzalez's cords, and whether a supervisor inspected the twist lock on Mr. Gonzalez's cord; (6) Lincoln Electric's corporate deposition, wherein Plaintiffs inquired about extension cords and connectors and the witness observed that the plug on one cord was damaged and allowed an incorrect insertion into a receptacle, which he opined ultimately resulted in electrocution that could not have been prevented by a GFCI; and (7) Trinity Marine's corporate deposition, wherein the witnesses testified about damaged connectors on the cord and damaged prongs.[67]  Trinity Marine avers that the foregoing evidence belies Plaintiffs' claim that they only recently learned of the facts giving rise to their proposed Third Amended and Supplemental Complaint.

---

[67] (1) R. Doc. 118, p. 2 (*citing* R. Doc. 13); (2) R. Doc. 118, pp. 2-3, (*citing* R. Doc. 118-7); (3) R. Doc. 118, p. 3, (*citing* R. Doc. 118-1); (4) R. Doc. 118, p. 3 (*citing* R. Doc. 118-2); (5) R. Doc. 118, pp. 3-5 (*citing* R. Docs. 118-3 and 118-4); (6) R. Doc. 118, p. 4 (*citing* R. Doc. 118-5); and (7) R. Doc. 118, p. 6 (*citing* R. Doc. 118-6).

Next, Trinity Marine contends that Plaintiffs' amendments are not important because they are futile under Rule 15 (discussed more fully below); specifically, Plaintiffs have failed to properly allege jurisdiction and the claims against the proposed new defendants are prescribed.[68] Further, Trinity Marine argues that Plaintiffs cannot claim that their amendments are important because they, and their own experts, contend that Defendants' experts' theories are incorrect. As to the third and fourth Rule 16 factors, Trinity Marine incorporates by reference its prior arguments asserted in its Opposition to Plaintiffs' Second Motion (*i.e.*, it faces prejudice by the amendments because additional discovery will be required on the new allegations and the new parties, the new allegations may require the retention of new liability experts by both parties, and a new trial date will likely be necessary).[69]

With regard to futility, Trinity Marine argues that the Third Motion fails to properly allege this Court's jurisdiction over the proposed new parties. The case was removed on the basis of diversity jurisdiction, but Plaintiffs failed to allege the citizenship of limited liability companies Trinity Industries, Trinity Corporate Services, and Legrand. Further, the alternate asserted basis for jurisdiction, *e.g.*, maritime law, is not applicable because of the nature of the accident (electrocution of a land-based worker on land).[70] Finally, Trinity Marine asserts that the amendments are also futile because the claims against the proposed new defendants, as well as Trinity Industries Services and Trinity Industries, are prescribed, relying on *Darr v. Amerisure Ins. Co.*[71]

In Reply to Lincoln Electric, Plaintiffs argue that Defendants cannot claim they are prejudiced by the addition of Legrand, when Defendants allege that Legrand is at fault (according

---

[68] R. Doc. 118, p. 11.
[69] R. Doc. 80, pp. 8-9 (citation omitted).
[70] R. Doc. 118, p. 12.
[71] R. Doc. 118, pp. 12-13. No. 16-232, 2016 WL 5110267, *6 (M.D. La. 2016).

to Plaintiffs).[72]  Plaintiffs contend that Lincoln Electric's evidence does not show that Defendants' theory of the accident was disclosed prior to the production of the expert reports.  Likewise, Plaintiffs argue that Trinity Marine has taken the deposition testimony of Trinity Marine's and Lincoln Electric's corporate representatives out of context, such that their testimony did not indicate Defendants' alleged theory that Legrand was potentially at fault (as articulated by Plaintiffs).[73]  Plaintiffs argue that the Court should reject Lincoln Electric's argument that Plaintiff can litigate its claims against Legrand in state court as being contrary to Fed. R. Civ. P. 19, legally unsupported, unnecessary, and unjust to Plaintiffs.[74]  Finally, Plaintiffs assert that their claims are not prescribed because the interruption of prescription against one solidary obligor is effective against all solidary obligors, or alternatively, because interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.[75]

### Revised Third Amended Complaint

On July 5, 2018, Plaintiffs were ordered to file a motion to substitute their proposed Third Amended Complaint with a pleading that properly alleges the citizenship of the newly proposed defendants, Legrand and Trinity Corporate Services.[76]  Plaintiffs' first Motion to Substitute Third Amended and Supplemental Complaint for Damages was denied for failure to comply with the Court's order.[77]  Plaintiffs' Second Motion to Substitute Plaintiffs' Revised Third Amended and Supplemental Complaint for Damages ("Revised Third Amended Complaint") adequately pleads the citizenship of the newly proposed parties.  The Second Motion to Substitute will be granted, but only to the extent it seeks to substitute Plaintiffs' Revised Third Amended Complaint at R.

---

[72] R. Doc. 138, p. 2.
[73] R. Doc. 139.
[74] R. Doc. 138, pp. 4-5.
[75] R. Doc. 139, pp. 4-5 *citing* La. C.C. arts. 1799 and 2324(C).
[76] R. Doc. 129.
[77] R. Docs. 140 and 141.

Doc. 143-7 in place of Plaintiffs' originally proposed Third Amended Complaint at R. Doc. 103-6.[78]

In their Second Motion to Substitute, Plaintiffs claim that they have learned that "Trinity Industries Services, LLC," which they sought to add in their Second Motion, is not an actual entity.[79]  Rather, Plaintiffs aver that Trinity Marine's counsel has confirmed that the correct entity that Plaintiffs seek to add is actually Trinity Corporate Services.  Therefore, in their Revised Third Amended Complaint, Plaintiffs have removed their claims against Trinity Industries Services, LLC.[80]  Plaintiffs also clarify in their Revised Third Amended Complaint that they seek to add "Legrand Holding, Inc." (hereinafter, "Legrand") as the correct defendant.  Finally, Plaintiffs attempt to add yet another defendant –"Pass & Seymour, Inc.," who is alleged to be a wholly-owned subsidiary of Legrand that "has acted in more or less the same role as Legrand."[81]

## II.    Law and Analysis

Fed. R. Civ. P. 15(a) provides that leave to amend, "shall be freely given when justice so requires."  In the instant case, however, Plaintiffs seek leave to amend the Complaint after the deadline for filing amendments and adding parties has passed.[82]  As such, Plaintiffs are asking this Court to modify the Scheduling Order to allow the filing of the proposed Second and Revised Third Amended and Supplemental Complaints.[83] Fed. R. Civ. P. 16(b) provides that scheduling orders, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

---

[78] R. Doc. 143.
[79] R. Doc. 143, ¶¶ II-IV.
[80] *See* R. Doc. 143-7, ¶ I.
[81] R. Doc. 143, ¶ VI, R. Doc. 143-7, ¶ I, pp. 3-4.
[82] R. Doc. 12.
[83] R. Doc. 56-2, R. Doc. 143-7.

According to the Fifth Circuit, "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[84] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[85] In determining "good cause," this Court must consider the following four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[86]

### A. Plaintiffs' Request to Add Trinity Corporate Services and Trinity Industries, and to Correct Plaintiff's Name

1. Plaintiffs Have Shown That Good Cause Exists to Modify the Scheduling Order Under Rule 16(b) as to These Amendments

*The Addition of the New Trinity Defendants*

Plaintiffs have shown that good cause exists to modify the Scheduling Order under Rule 16(b) to add Trinity Corporate Services and Trinity Industries as defendants in this case.[87] With respect to the first factor, the explanation for Plaintiffs' failure to timely move for leave to amend before the March 17, 2017 deadline,[88] Plaintiffs' do not offer a sufficient explanation for their delay in seeking leave to amend to add Trinity Industries. As Trinity Marine points out, Plaintiffs

---

[84] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

[85] *Id*. at 535 (*quoting* 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

[86] *S&W Enterprises, L.L.C.*, 315 F.3d at 536 (citations omitted).

[87] As previously mentioned, Plaintiffs' Revised Third Amended Complaint withdrew Plaintiffs' claims against Trinity Industries Services, LLC. R. Doc 143-7.

[88] R. Doc. 12.

were in possession of several documents, as early as January 2017, that listed Trinity Industries, Inc.—enough to at least incite inquiry as to Trinity Industries, Inc.'s potential involvement.[89]

Plaintiffs' delay in seeking leave to amend to add Trinity Corporate Services is not, however, unexplained, unjustified or unreasonable. Contrary to Trinity Marine's assertion, the documents are not clear with respect to the involvement of Trinity Corporate Services, as many of the documents relied upon by Trinity Marine refer to an entity named "Trinity Marine Services, LLC," rather than Trinity Corporate Services, LLC.[90] Moreover, Michael Stripe, the Vice-President of Safety for Trinity Corporate Services and Trinity Marine's corporate representative, mis-identified the correct entity with respect to safety, as he testified that the name of the correct entity was "Trinity Industries Services."[91] Later, Trinity Marine's counsel confirmed that there is no such entity and that the real entity is Trinity Corporate Services.[92] If Trinity Marine's own representative is confused about the name of the correct Trinity entity responsible for safety, it is unrealistic to think Plaintiffs were in a better position to determine which Trinity entity is the correct one. Thus, the first factor weighs in favor of finding that good cause exists to modify the Scheduling Order to allow the addition of Trinity Corporate Services. The first factor does not weigh in favor of an amendment to add Trinity Industries.

With respect to the second factor, the importance of the amendments, adding Trinity Industries and Trinity Corporate Services as defendants is important to the relief sought by

---

[89] *See e.g.*, R. Doc. 80-11, Corporate Safety and Health Policy which states that it is the policy of Trinity Industries, Inc. to "eliminate or reduce exposure of employees to accidental injury or conditions, which may adversely affect their safety or health." *See also*, Master Temporary Labor Services Agreement between NSC Technologies Worldwide and Trinity Industries, Inc., whereby NSC agreed to provide welders and fitters to Trinity Industries, Inc. R. Doc. 80-1, pp. 5-32, and a Certificate of Liability Insurance listing Trinity Industries, Inc., and its subsidiaries and affiliated legal entities as additional insureds with NSC. R. Doc. 80-1, p. 33.

[90] *See* R. Doc. 80-8 at pp. 1-2, 5-8, and 11-13. *See also* R. Doc. 80-6 at p. 3, ll. 5-9.

[91] R. Doc. 143-1, pp. 2-3, 5-10, 12, and 14-15. *See also* R. Doc 143-1, p. 13, ll. 17-20 (wherein Trinity Marine's corporate representative appears to have testified that there were no other Trinity companies involved besides Trinity Industries, Trinity Marine, and Trinity Industries Services).

[92] R. Doc. 143-2.

Plaintiffs on their wrongful death and survival claims. Plaintiffs allege that the two entities were allegedly responsible for the safety procedures at the site of the underlying accident and that their actions may have caused or contributed to the death of Mr. Gonzalez.[93]

Trinity Marine argues that Plaintiffs' claims against Trinity Corporate Services and Trinity Industries are unimportant (and/or futile) because they are prescribed.[94] In this case, Plaintiffs have alleged wrongful death and survival actions, premised upon negligence and products liability, against these proposed defendants. Thus, a one-year prescriptive period under Louisiana law applies.[95] Plaintiffs' Second and Third Motions attempting to add the new Trinity entities were filed on March 31, 2018 and May 25, 2018, respectively, which filings were well past the one-year anniversary of Mr. Gonzalez's death, *i.e.*, October 22, 2016.[96] Therefore, Plaintiffs' claims against the proposed Trinity entities were prescribed on their face when they were raised, unless the claims relate back to the filing of the original Petition. "[I]t is clear that the Federal Rules of Civil Procedure 'apply to a civil action after it is removed from a state court.'"[97] Thus, Fed. R. Civ. P. 15(c) applies to determine whether the proposed Amended Complaints relate back to the filing of the original Petition. Plaintiffs have the burden to demonstrate that an amended complaint relates back under Rule 15(c).[98]

Rule 15(c), as interpreted by the United States Supreme Court's holding in *Krupski v. Costa Crociere S. p. A.*,[99] appears to allow relation back in the situation at hand. Under Rule 15(c)(1), an amendment to a pleading relates back to the filing of the original pleading when:

---

[93] R. Doc. 56-1 at pp. 1-2.
[94] R. Doc. 118, pp. 11-12.
[95] *See* La. C.C. art. 2315, La. C.C. art. 2315.1, and La. C.C. art. 3492.
[96] R. Doc. 1; R. Doc. 27, ¶ IV; R. Docs. 56 and 103.
[97] *Darr v. Amerisure*, No. 16-232, 2016 WL 5110267, (M.D. La. Aug. 31, 2016), *6, and *Norton v. Livingston Parish Detention Center*, No. 13-437, 2014 WL 1057218 (M.D. La. Mar. 19, 2014), *3 (citations omitted).
[98] *Darr,* 2016 WL 5110267 at *6 (citations omitted).
[99] *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 548, 130 S. Ct. 2485, 2493, 177 L.Ed. 2d 48 (2010).

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[100]

It is clear that factors (A) and (B) are met, as Louisiana law allows for relation back,[101] and the amendments assert claims as to these proposed defendants that arise out of the same transaction and occurrence set out in the original Petition. Factor (C)(i) also appears to be met. Specifically, the proposed Trinity Defendants have an identity of interest with Trinity Marine, such that they likely received constructive notice of the action,[102] and there is record evidence indicating that they will not be prejudiced in defending on the merits. For example, the Vice-President of Safety for

---

[100] Fed. R. Civ. P. 15(c)(1).

[101] *See* La. C.C.P. art. 1153 *and see Smith v. Auto Club Family Ins. Co.,* No. 08-1358, 2008 WL 5110590, at *3 (E.D. La. Nov. 25, 2008) ("Louisiana law provides a similar relation back mechanism: "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." La. Code Civ. Proc. Art. 1153. Because Art. 1153 is based on Rule 15, Louisiana courts apply essentially the same test as Rule 15, but state the test in a four-part instead of a three-part framework. Thus, relation back of an amendment under Louisiana law requires: (1) a factual nexus, that is the cause of action in the amended petition must arise out of the same transaction or occurrence as that involved in the original petition; (2) the new defendant must have received actual notice of the original action so that there is no prejudice to its rights; (3) the new defendant must know or have reason to have known that it would have been named in the original petition but for a mistake in identity; and (4) the new defendant must not be a wholly new or unrelated defendant as to the defendant in the original petition."

[102] *See Jacobsen v. Osborne,* 133 F.3d 315, 320 (5th Cir. 1998) (Holding that "our courts" will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted) (citations omitted). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (citation omitted). In this regard, notice may be imputed to the new party through shared counsel. *Barkins v. International Inns, Inc.,* 825 F.2d 905, 907 (5th Cir. 1987), *Hendrix v. Memorial Hosp. of Galveston County,* 776 F.2d 1255, 1257–58 (5th Cir. 1985) (*reversed in part on other grounds*). In this case, Trinity Marine submitted Initial Disclosures identifying Stripe of Trinity Corporate Services as Trinity Marine's witness on February 2, 2017, which suggests shared counsel. R. Doc. 80, p. 1, R. Doc. 80-1, p. 1.

Trinity Corporate Services, Michael Stripe, was the designated corporate representative of Trinity Marine and testified at Trinity Marine's Rule 30(b)(6) corporate deposition, which indicates Trinity Corporate Services' knowledge of the action.[103]  Regarding factor (C)(ii), in *Krupski*, the personal injury plaintiff had actual or constructive knowledge of two entities that were related and potential defendants.  The plaintiff sued one entity on the basis of diversity jurisdiction, but then, upon learning that the second entity was the actual defendant, dismissed the first entity and sued the second one after the prescriptive period expired.  Overturning the lower courts, the Supreme Court held:

> The question under Rule 15(c)(1)(C)(ii) is not whether [plaintiff] knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.[104]

Applying *Krupski* to this particular case, the Petition and First Amended Complaints indicate that Plaintiffs intended to sue, for example: (1) "the owner and custodian and person in control of the premises…liable…for…placing in use…the [Welder]…," and the entity responsible for (2) "failing to adequately to monitor and supervise the floor of its building and the work areas of its premises…," and (3) "failing to adequately supervise…the conduct of its servants….," which allegations implicate Trinity Marine.[105]  However, Plaintiffs' Petition and First Amended Complaint indicate that Plaintiffs also intended to sue: "the owner and custodian and person in control of…the [Welder] that was involved in the incident….," *and*, *e.g*., the entity responsible for

---

[103] *See* R. Doc. 143-1.
[104] *Krupski,* 560 U.S. at 548.  This analysis applies even if the plaintiff is aware of the existence of the proposed defendant, and chooses not to sue it.  Moreover, the amending party's diligence/post-filing conduct is not a factor to be considered in this particular analysis, unless it bears on the prospective defendant's understanding of whether the plaintiff initially made a mistake concerning the proper party's identity.  *Id*. at 549, 553-554.
[105] R. Doc. 1-1, ¶ XII, R. Doc. 27, ¶ XII (b), (c), and (d).

(1) "failing to provide a safe area for …permittees," (2) "failing to warn… employees…of the hazards," (3) "failing to warn employees…of unreasonable risks of harm…," and (4) "failing to…maintain…and provide potential operators of the [Welder] with an owner's/user's manual for the [Welder]," among many other similar allegations, which implicate Trinity Corporate Services and Trinity Industries, as shown by the following.[106]  Stripe, Vice-President of Safety for Trinity Corporate Services, testified that Trinity Corporate Services (which he mistakenly identified as "Trinity Industries Services, LLC") is responsible for regulatory compliance, everything related to OSHA, all the corporate standards and the "toolbox," materials related to electrical equipment handed out at orientation and "tool box" talks, training on electrical issues, physical hazard audits of the facility, and the protocol put in place for GFCI and extension cords after the accident-- in other words, safety issues.[107]  Further, Lincoln Electric's discovery responses identified Trinity Industries as the entity that purchased and owned the Welder, and Trinity Marine produced the "Corporate Safety Standard" policy, and in particular, the "Electrical Safety-Related Work Practices," which are promulgated by "Trinity Industries Inc."[108] The foregoing indicates that the proposed Trinity entities should have known that they were not named as defendants only because of Plaintiffs' mistake concerning which Trinity entity was in charge of safety,  the nature of which the *Krupski* court found to "clearly [be] a 'mistake concerning the proper party's identity.'"[109]

---

[106] R. Doc. 1-1, ¶ XII, R. Doc. 27, ¶ XII (a), (e), (f), and (h).
[107] R. Doc. 143-1.
[108] R. Doc. 54-5, p. 5, R. Doc. 80-11, pp. 14, 30.
[109] *Krupski,* 560 U.S. at 555.  *Darr v. Amerisure,* No. 16-232, 2016 WL 5110267, *6 (M.D. La. 2016), relied upon by Trinity Marine, is factually distinguishable.  *Darr* involved a multi-car motor vehicle accident wherein the plaintiff originally sued the diverse driver that caused the accident that rear-ended the plaintiff.  The plaintiff then attempted to join Colvin, a non-diverse driver whom plaintiff actually rear-ended.  Colvin was known to the plaintiff from the beginning but the plaintiff changed one of his prior allegations about Colvin's involvement in order to join him after removal in an attempt to defeat diversity jurisdiction.  The Court held that the plaintiff failed to prove that the proposed amendment related back pursuant to Fed. R. Civ. P. 15 because the proposed defendant was entirely new to the matter.  In contrast to the facts herein, there was no evidence in *Darr* of an identity of interest between Colvin and any other of the defendants, or some other indication of Colvin's constructive knowledge of the plaintiff's suit, or evidence that the plaintiff originally intended to sue Colvin but failed to due to some mistake as to his identity.  Rather, the facts

Accordingly, the amendments as to these proposed defendants relate back to the original Petition under Fed. R. Civ. P. 15(c)(1) and are not untimely or unimportant. Thus, the second Rule 16(b) factor weighs in favor of finding good cause exists to modify the Scheduling Order to allow the addition of both Trinity Industries and Trinity Corporate Services.

The third factor, the potential prejudice in allowing the amendments, is neutral. Although it does not appear that the amendments to add the new Trinity entities are sought in bad faith or would unfairly surprise the Defendants, the proposed amendments will cause some delay. This suit was filed almost two years ago and the parties have been engaged in discovery in this court for over eighteen months. Additionally, the fact discovery deadline (which has been extended at least three times) has expired and, as Trinity Marine points out, the expert report and expert discovery deadlines have also already been extended.[110] Thus, the addition of Trinity Industries and Trinity Corporate Services may require some further modification of the existing Scheduling Order, which may increase the length and costs of this litigation to some degree.

However, the fourth factor, the availability of a continuance to cure such prejudice, weighs in Plaintiffs' favor, and cures virtually all potential prejudice. All parties acknowledge that if the amendments are allowed, this court could grant a continuance of the remaining deadlines and/or reset deadlines in this case, including the trial date, to allow the parties additional time to conduct discovery regarding these amendments, if necessary.[111] However, extensive additional discovery may not be needed as to these entities, as they are inter-related with Trinity Marine, who has been actively defending against Plaintiffs' claims from the inception of the case.[112] Finally, while

---

indicated otherwise; that is, the *Darr* plaintiff was aware of Colvin's identity from the beginning (which does not by itself prevent relation back per *Krupski*), but only chose to add him in order to defeat diversity jurisdiction.

[110] R. Doc. 51 and R. Doc. 120.

[111] The District Judge recently granted the Plaintiffs' Motion to Continue. R. Docs. 130 and 151.

[112] Indeed, Plaintiffs have stated that they anticipate seeking only limited discovery as to the new Trinity defendants. R. Doc. 86-2, p. 7.

Trinity Marine's principal complaint is that a continuance will increase the litigation costs in this matter, Trinity Marine would have incurred those costs if Trinity Industries and Trinity Corporate Services had been added as defendants in this litigation earlier and, as noted above, Trinity Marine may have some responsibility for the delay in identifying the proper Trinity entities to be named. As such, the fourth factor weighs in favor of finding that good cause exists to modify the Scheduling Order.

In its Opposition to the Third Motion, Trinity Marine urges the Court to apply a heightened level of scrutiny because of its pending Motion for Summary Judgment ("Summary Judgment"),[113] relying on *Bennett v. Consolidated Gravity Drainage Dist. No. 1*, wherein the Fifth Circuit held that a party's attempt to raise new theories of recovery by amendment after an opposing party has filed a motion for summary judgment should be "more carefully scrutinize[d]."[114] However, Plaintiffs' Second Motion (seeking to add Trinity Industries, and mis-naming Trinity Corporate Services as Trinity Industries Services) was filed on March 31, 2018, *before* Trinity Marine's April 25, 2018 Summary Judgment.[115] Further, it is unclear how the addition of the new entities would affect Trinity Marine's LHWCA immunity—the basis for the Summary Judgment.

After conducting the four-factor analysis set forth in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,[116] Plaintiffs have shown that good cause exists to modify the Scheduling Order with respect to the deadline for filing amended pleadings and adding new parties as to Trinity Industries and Trinity Corporate Services. The balance of the competing interests

---

[113] R. Doc. 85. Therein, Trinity Marine seeks immunity from Plaintiffs' claims under the LHWCA.
[114] 648 Fed. Appx. 425, 429 (5th Cir. 2016) (citations omitted).
[115] R. Docs. 56 and 85. In its Opposition to the Second Motion, Trinity Marine also urged the Court to apply this heightened standard of review, although it had not yet filed its Summary Judgment, because Trinity Marine allegedly notified Plaintiffs of its intent to file its Summary Judgment. *See* R. Doc. 80, p. 4. In *Bennett*, the heightened standard was applied after an actual motion was filed. This Court declines to extend *Bennett* to the mere suggestion of the filing of such a motion.
[116] 315 F.3d 533, 536 (5th Cir. 2003).

and equities weigh in favor of modifying the Scheduling Order with respect to adding Trinity Industries, Inc. and Trinity Corporate Services, LLC, as defendants in this matter.[117]

*The Correction of Plaintiff's Name*

While Plaintiffs do not assert much argument in support of their request to correct Plaintiff's name, or provide the reasons for the untimeliness of this proposed amendment,[118] the Court finds that it is important for the names of the Plaintiffs to be correct. Further, the correction is not prejudicial to Defendants, who have not opposed this particular amendment. Accordingly, the balance of the competing interests and equities again weighs in favor of modifying the Scheduling Order to allow for an amendment that corrects Plaintiff's name from "Estevan Lopez Coello" to "Jose Esteban Lopez Coello."

    2. Plaintiffs Have Shown that Good Cause Exists Under Fed. R. Civ. P. 15(a) To Allow These Amendments

Finding that Plaintiffs have demonstrated that good cause exists to modify the Scheduling Order, the Court must apply the more liberal standard of Fed. R. Civ. P. 15(a) to determine whether leave to amend the Complaint should be granted or denied. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." The court liberally construes Rule 15(a) in favor of amendment.[119] Although leave to amend should not be automatically granted, "A district court must possess a substantial reason to deny a request for leave to amend."[120] In determining whether to grant leave, a court may consider several factors, including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

---

[117] The Revised Third Amended Complaint appears to adequately allege the citizenship of the new Trinity Defendants. R. Doc. 143-7.

[118] R. Doc. 103-1, p. 5.

[119] *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) ("[T]he liberal position of the federal rules on granting amendments . . . evinces a bias in favor of granting leave to amend").

[120] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted).

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . ."[121]

Granting Plaintiffs leave to amend their Complaint is proper under Rule 15 as to the foregoing amendments for the same reasons as those supporting a finding of good cause under Fed. R. Civ. P. 16 to modify the scheduling order. Plaintiffs' Second and Third Motions will be granted to the extent they seek leave to add Trinity Industries, Inc. and Trinity Corporate Services, LLC, and to correct Plaintiff's name.

**B. Plaintiffs' Request to Add Legrand and Pass & Seymour, Claims of Joint and Solidary Liability of Defendants, and Negligence Claims against the Trinity Entities**

1. Plaintiffs Have Not Shown That Good Cause Exists to Modify the Scheduling Order Under Rule 16(b) as to These Amendments

*The Addition of Legrand*

The first factor weighs heavily against Plaintiffs. Plaintiffs have not provided sufficient explanation for why they seek leave to amend to add Legrand, an entirely new and unrelated party (and Pass & Seymour, discussed *infra*), fourteen (14) months after the deadline set by the Court to file amended pleadings when the evidence submitted reflects that Plaintiffs had knowledge of potential issues with the cords and plugs, were provided documents naming Legrand, and were aware of testimony regarding the plugs manufactured by Legrand, sufficient to name Legrand in a more timely manner, if not prior to the deadline.[122] As early as January 26, 2017, Plaintiffs stated in the parties' joint Status Report that they believed "other safety measures were lacking" in addition to the Welder, which indicates Plaintiffs were considering other potential causes of/issues

---

[121] *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962)).

[122] *See Hotard Coaches, Inc. v. Caterpillar, Inc.,* No. 11-00488, 2013 WL 12182610, at *2 (M.D. La. May 28, 2013) (denying motion for leave to amend when motion was filed ten months after deadline).

related to the accident long before they sought leave to amend.[123]  Other persuasive examples,

which establish that Plaintiffs knew (or should have known) of Legrand and potential issues with

the plugs and cords well before the filing of their Third Motion, include: (1) on February 17, 2017,

the parties participated in a joint inspection of the equipment involved, including the cords and

plugs, which inspection was preceded by an email from counsel that listed the specifications and

manufacturers of the parts, including the plugs, to be inspected;[124] (2) in October 2017, Lincoln

Electric responded (in pertinent part) to Plaintiffs' August 2017 Interrogatory 12: "Subject to

the…Objections, Lincoln Electric states that it is in the process of investigating the facts in this

case, including investigating whether the two extension cords were properly connected;"[125] (3) in

November, 2017, Trinity Marine produced documents in response to Plaintiffs' October 6, 2017

Request for Production 31, which contained purchase records of the equipment in the accident,

including documents which clearly and unambiguously identify "Pass & Seymour" and "Legrand"

as associated with the plugs;[126] and, (4) on November 28, 2017, Plaintiffs deposed Mr. Gonzalez's

supervisors and asked them many questions about extension cords and damage thereto.  A review

of the portions of the deposition transcripts in the record clearly indicates that questions were asked

about the cords and plugs, the training of the workforce on the use of extension cords, observations

of defects in the extension cords, training on properly joining two cords, placing the correct prongs

of the connectors into the correct sockets, and the consequences of improper mating.[127] Plaintiffs

---

[123] R. Doc. 10.
[124] R. Doc. 118-9, R. Doc. 111-1.
[125] R. Doc. 111-5, p. 3.  Interrogatory 12 askes, in pertinent part:  "Please state your understanding of the manner and place of attachment of each electrical cord…that was plugged into or attached to the Subject Welder at the time of the Subject Incident…."
[126] R. Doc. 118-2.  Lincoln Electric avers that Trinity Marine also produced documents identifying Legrand and Pass & Seymour and photographs of the cords and plugs in February and November 2017.  *See* R. Doc. 111, p. 5 *citing* 111-3 and 111-4.
[127] R. Docs. 118-3 and 118-4.

admit that they asked these questions.[128] The foregoing casts serious doubt on Plaintiffs' claim that they only became aware that Legrand was material upon receipt of Defendants' expert reports.[129] These facts militate strongly against a modification of the Scheduling Order to add Legrand.

The second factor, the importance of the amendments, is neutral. On the one hand, the amendments are important because the addition of Legrand and associated claims raises new allegations against an entirely new defendant, which could change the course of the litigation. On the other hand, Plaintiffs and their experts have explicitly stated that they do not agree with Defendants' experts' theory and have submitted expert reports that refute it.[130] Additionally, although Plaintiffs seem to characterize the defense experts' theory as suggesting potential liability on the part of the Legrand, in reality, it appears that defendants' experts' theory is really one of comparative fault, *i.e.*, that Mr. Gonzalez was responsible for his own injuries because he improperly matched the plugs.[131] Therefore, the addition of Legrand at this late date is of questionable importance. The second factor is neutral.

The third factor, the potential prejudice in allowing the amendments, weighs against Plaintiffs. Unlike the addition of the new Trinity Defendants, which are entities related to an existing Defendant, Legrand is an entirely new and unrelated party. Thus, Defendants potentially face great prejudice and expense in the joinder of Legrand. The fact and expert discovery periods

---

[128] R. Doc. 139, p. 1.

[129] R. Doc. 103-1, pp. 1-3, R. Doc. 139, pp. 2, 5.

[130] *See* R. Doc. 103, p. 1 (contesting the defense experts' "scenario"), R. Doc. 138, p. 1 (arguing for rejection of Lincoln Electric expert's theory), and R. Doc. 118-11, p. 7 *et seq.*

[131] R. Doc. 118, p. 1 ("The defendants and their experts have reached conclusions contrary to plaintiffs about the cause of the electrocution, finding that the electrocution occurred as a result of decedent's negligence in mis-mating two extension words by placing the wrong prong of a connector on one cord in the wrong socket of a connector on the other cord."). *See also*, R. Docs. 118-9, p. 10 ("Mr. Gonzalez most likely made the improper connection at the extension cord prior to the accident …."").

have already been extended multiple times, and they are now closed.[132]  Completely re-opening fact and expert discovery to accommodate an entirely new Defendant would cause a greater burden on, and significantly increase the costs to, the existing Defendants, which is unwarranted in light of what seems to be Plaintiffs' failure to act more diligently.  Thus, the third factor does not weigh in favor of finding that good cause exists to modify the Scheduling Order.

The fourth factor, curing prejudice by continuance, is the only factor that weighs in Plaintiffs' favor.  It does not, in light of the other factors, establish good cause to modify the Scheduling Order.   It bears noting that the analysis as to Legrand for this factor is unlike that for the new Trinity Defendants, because any potential prejudice regarding the addition of the new Trinity Defendants may be ameliorated by a limited continuance of the deadlines.  In contrast, a continuance if Legrand were joined would undoubtedly be lengthier.

After conducting the four-factor analysis set forth in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,[133] Plaintiffs have not shown that good cause exists to modify the Scheduling Order for filing amended pleadings and adding new parties with respect to the addition of Legrand.   Two factors weigh heavily against Plaintiff, and particularly, the lack of explanation for the delay, which is the most important factor.[134] "The good-cause standard will not be satisfied if the court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule."[135] Because Plaintiffs have not shown that good cause exists to modify the Scheduling Order under Rule 16(b) as to the addition of Legrand, the

---

[132] The District Judge granted Plaintiffs' Motion to Continue and ordered "entry of a new Scheduling Order," without referencing specific deadlines.  R. Docs. 130, 151.

[133] 315 F.3d 533, 536 (5th Cir. 2003).

[134] *See Allergan, Inc. v. Teva Pharmaceuticals USA, Inc*., No. 15-1455, 2017 WL 119633 (E.D. Tex. Jan. 12, 2017) ("The most important factor bearing on the "good cause" inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline.")

[135] 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2, at 322 (3d ed. 2010) (*citing* numerous cases).

Rule 15 analysis is inapplicable. Accordingly, Plaintiffs' Third Motion will be denied to the extent it seeks leave to add Legrand.

*Negligence Claims against the Trinity Entities and Joint and Several Liability*

Regarding the assertion of negligence claims against the Trinity Defendants, the first factor weighs against Plaintiffs for the same reasons enumerated as to Legrand. The record reflects that Plaintiffs had sufficient information pointing to the cords and the plugs to assert their proposed negligence claims regarding this equipment to seek amendment earlier. This is even more so the case for the joint and several liability allegation, and Plaintiffs have offered no explanation for their delay in seeking leave to assert this allegation. As such, the first factor does not provide good cause to modify the Scheduling Order.

The second factor, the importance of the amendments, weighs in Plaintiffs' favor as to the negligence claims, to some degree. Allowing Plaintiffs to assert additional claims of negligence provides additional grounds upon which Plaintiffs may potentially recover. However, Plaintiffs' first Amended Complaint already asserts general negligence claims against Trinity Marine, which appear to encompass some of their newly proposed negligence claims. *See, e.g.*, Amended Complaint at ¶ XII:

> "As owner and custodian and person in control of the premises….Trinity Marine is liable for its actions and/or omissions, and in addition vicariously liable for the negligent an fault-laden acts and/or omissions of its servants…and employees…including but not limited to…the following: (i) failing to obtain all necessary parts in order to safely, properly, and securely….otherwise operate the IDEALARC DC 600…; (m) failing to warn of the presence of unreasonable risk of harm, hazards, and dangers; failing to make the presence of unreasonable risks of harm, hazards, and dangers conspicuous, and failing to keep unreasonable risks of harm and hazards away from those areas of the building or the work areas of the premises used by …employees….(n) failing to warn or adequately to warn of the presence of unreasonable risks of harm, hazards, and dangers presented in the building or the work areas of the premises; and (o) **any and**

**all other negligent or fault-laden acts or omissions that may be proven during the pendency of these proceedings.**[136]  (emphasis added)

Thus, to the extent that some of Plaintiffs' proposed allegations are duplicative of, or encompassed within, the allegations already asserted, they are unimportant.   Regarding joint and solidary liability, Plaintiffs themselves have averred that this claim "may not be necessary since the nature of the various parties' liability vis-à-vis each other should follow as a matter of law." [137]   This statement detracts from the importance of the proposed amendment because it recognizes that the amendment is unnecessary.   On balance, the second factor gives good cause to modify the Scheduling Order, but only with respect to some of the proposed negligence claims.

The third factor, the potential prejudice in allowing the amendments, weighs against Plaintiffs.   The assertion of new claims against parties that have already been involved in this litigation for years, particularly where discovery and expert deadlines have passed, is prejudicial and costly to Defendants.   Finally, the fourth factor weighs in Plaintiffs' favor, as a continuance could resolve the potential prejudice faced by Defendants.   However, after conducting the four-factor analysis set forth in *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,[138] and in light of the fact that the first factor is the most important, Plaintiffs have not shown good cause to modify the Scheduling Order to extend the deadline for adding these new claims.   Plaintiffs' lack of diligence in asserting potential new claims outweighs any potential importance.   Plaintiffs' Third Motion will be denied as to these claims.

---

[136] R. Doc. 27.
[137] R. Doc. 103-1, p. 7.
[138] 315 F.3d 533, 536 (5th Cir. 2003).

2. Plaintiffs Have Not Properly Sought Leave of Court to Add Pass & Seymour

In their Second Motion to Substitute Revised Third Amended and Supplemental Complaint, Plaintiffs attempt to add Pass & Seymour as yet another unrelated defendant.[139] The Court denies this request on two grounds. First, it is untimely, as it is well-past the scheduling order deadline of March 17, 2017 to seek leave to add new parties.[140] Additionally, the request is procedurally improper because it was not raised pursuant to a properly-filed motion for leave to amend pursuant to Rule 16 that sets forth good cause. Plaintiffs have not alleged any argument in support of the untimely addition of Pass & Seymour, much less good cause. For these reasons, Plaintiffs' request to add Pass & Seymour will be denied.[141]

## III. Conclusion

Consistent with the good cause standard set forth in Fed. R. Civ. P. 16 and the liberal standard for amending pleadings under Fed. R. Civ. P. 15(a), Plaintiffs have shown that good cause exists for the Court to modify the Scheduling Order to allow Plaintiffs to file an appropriately-revised Third Amended Complaint to add Trinity Industries, Inc. and Trinity Corporate Services, LLC, as additional defendants in this matter, and to correct the name of Plaintiff "Estevan Lopez Coello" to "Jose Esteban Lopez Coello." Plaintiffs have not shown good cause exists for the Court to modify the Scheduling Order to allow Plaintiffs to add Legrand Holding, Inc. or Pass & Seymour, Inc., to add claims of negligence against the Trinity Defendants, or to allege joint, several, or *in solido* liability among Defendants.

---

[139] R. Doc. 143, pp. 3, 5.
[140] R. Doc. 12.
[141] Even if the Court were to consider Plaintiffs' request to add Pass & Seymour, Plaintiffs have not shown that good cause exists under Rule 16 for the Court to modify the Scheduling Order to allow an amendment naming it. The reasons supporting denial of leave to add Pass & Seymour are the same reasons supporting denial of leave to add Legrand.

Accordingly,

**IT IS ORDERED** that Plaintiffs' [Second] Motion for Leave to Amend Complaint[142] is **GRANTED IN PART** to the extent it seeks leave to add Trinity Industries, Inc. as a Defendant in this matter, and **DENIED AS MOOT** to the extent it seeks leave to add Trinity Industries Services, LLC, as a defendant.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion to Substitute Plaintiffs' Revised Third Amended and Supplemental Complaint for Damages[143] is **GRANTED** to the extent it seeks leave to substitute Plaintiffs' Revised Third Amended and Supplemental Complaint at R. Doc. 143-7 as the proposed pleading in R. Doc. 103-6, and **DENIED** to the extent it seeks to add Pass & Seymour, Inc., as a defendant.

**IT IS FURTHER ORDERED** that, upon consideration of the Revised Third Amended and Supplemental Complaint for Damages, Plaintiffs' Motion for Leave to File Third Amended and Supplemental Complaint[144] is **GRANTED** to the extent it seeks leave to add Trinity Corporate Services, LLC as a defendant in this matter and to correct the name of Plaintiff "Estevan Lopez Coello" to "Jose Esteban Lopez Coello," and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Expedited Hearing on Motion for Leave to File Third Amended and Supplemental Complaint[145] is **DENIED AS MOOT.**

---

[142] R. Doc. 56.
[143] R. Doc. 143.
[144] R. Doc. 103.
[145] R. Doc. 104.

**IT IS FURTHER ORDERED** that, within fourteen (14) days from the date of this Ruling and Order, Plaintiffs shall file a comprehensive amended complaint that removes: factual allegations related to claims against Legrand and Pass & Seymour; new negligence claims against the Trinity Defendants; and joint, several, and *in solido* liability claims against Defendants, and which will become the operative complaint in this matter.

Signed in Baton Rouge, Louisiana, on August 30, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**