UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

NELIN XIOMARA GONZALEZ                           CIVIL ACTION
ELVIR, ET AL.

VERSUS                                            16-814-SDD-EWD

TRINITY MARINE PRODUCTS, INC.,
ET AL.

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant Trinity Marine Products, Inc. ("Trinity Marine"). Defendants, Liberty Mutual Insurance Company and Navigators Insurance Company, have adopted Trinity Marine's motion for summary judgment.[2] Plaintiffs Nelin Xiomara Gonzalez Elvir and Estevan Lopez Coello ("Plaintiffs") filed an *Opposition*[3] to this motion to which Trinity Marine filed a *Reply*.[4] For the following reasons, on the current record, the Court finds that the Trinity Marine's motion for summary judgment should be denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises out of the death of Jose Lopez Gonzalez ("Gonzalez") which occurred while he was performing welding work at a facility owned by Trinity Marine.[5] Gonzalez was at all times employed as a welder for NSC Technologies, Inc. ("NSC") while

---

[1] Rec. Doc. 85.
[2] Rec. Doc. 96 (Motion for Summary Judgment by Liberty Mutual Insurance Company); Rec Doc. 97 (Motion for Summary Judgment by Navigators Insurance Company).
[3] Rec. Doc. 98.
[4] Rec. Doc. 119.
[5] Rec. Doc. 27, p. 7.
50871

working at the Trinity Marine facility in Brusly, Louisiana ("the Brusly plant").[6] Gonzalez had been working at the Brusly plant for approximately three weeks before he was fatally electrocuted during a welding job on October 22, 2015.[7] According to the U.S. Department of Labor's Fatality/Catastrophe Report, Gonzalez was inspecting welds on the underside of a barge when co-workers heard a scream and went to check on him.[8] Gonzalez was found lying under the barge clutching his work light. CPR was administered, but Gonzalez could not be revived and was pronounced dead at the scene.[9] The report indicates Gonzalez's fatal injury involved a power source and the orange work light he was using to inspect the welds.[10] Plaintiffs, the surviving parents of Gonzalez, assert negligence and products liability claims against Trinity Marine and the other named Defendants. Defendants move for summary judgment on the grounds that Gonzalez was a borrowed employee of Trinity Marine and, pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"),[11] Trinity Marine is tort immune.[12]

## II. LAW AND ANALYSIS

### A. Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "An issue is material if its resolution could affect the outcome of the action."[14]

---

[6] *Id.* at 3; Rec. Doc. 85-1, p. 2.
[7] Rec. Doc. 98-2, p. 71 (Deposition of Trinity Marine Products, Inc. corporate representative, Michael Stripe).
[8] Rec. Doc. 85-13, p. 4.
[9] *Id.* at 1.
[10] *Id.* at 4.
[11] 33 U.S.C. § 905(a)
[12] Rec. Doc. 85-1, p. 1.
[13] Fed. R. Civ. P. 56(a).
[14] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

"When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[15] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[16] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[17] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[20] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate

---

[15] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[16] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25).

[17] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[18] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[19] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[20] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

50871

precisely how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[22]

### B. LHWCA Borrowed Employee Legal Standard

The parties agree that Gonzalez was covered by the LHWCA based on his work at the Brusly facility building vessels adjacent to a navigable body of water.[23] The LHWCA prevents a covered employee from bringing tort actions against his employer.[24] Although Gonzalez was employed by NSC, Trinity Marine argues that Gonzalez qualifies as a borrowed employee of Trinity Marine; therefore, Plaintiffs' exclusive remedy is governed by the LHWCA. Defendants contend that genuine issues of material fact exist as to Gonzalez's status as a borrowed employee. Whether Gonzalez is a borrowed employee is a question of law for the Court to decide.[25]

If Gonzalez was Trinity Marine's borrowed employee, Plaintiffs' claims against Trinity Marine are barred as a matter of law. The parties agree that the following nine factors outlined by the Fifth Circuit in *Ruiz v. Shell Oil Co.*[26] are used to determine whether a worker qualifies as a borrowed employee: (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation? (2) Whose

---

[21] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[22] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).
[23] Rec. Doc. 85-2, p. 2, no. 8., Rec. Doc. 98-1, p. 1 ("… plaintiffs do not contest Trinity Marine's purported 'Background Facts' (Document 85-2 at 1-2, No. 1-9)").
[24] 33 U.S.C. § 905(a); *Mayet v. Energy XXI Gigs Services, LLC*, 2019 WL 527730 (E.D. La. 2019).
[25] *In re Weeks Marine*, Inc., 88 F.Supp.3d 593, 596-597, 2015 A.M.C. 507 (*citing Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988).
[26] 413 F.2d 310, 312-13 (5th Cir. 1969).
50871

work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished the tools and the place of performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee?[27] The Court will analyze each factor in turn.

1) Control

Although no single factor is determinative, the Fifth Circuit has generally considered the first factor, control, to be the central factor of borrowed employee status.[28] In considering this factor, the Court must distinguish "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."[29] Trinity Marine relies on deposition testimony of NSC representatives and Trinity Marine supervisors to support its position that Gonzalez's work was controlled by Trinity Marine.[30] According to NSC's corporate representative, NSC's welders, like Gonzalez, "worked under the sole direction of Trinity Marine."[31] Trinity Marine welding supervisor, Richard Adams ("Adams"), testified that he had "full control" over Gonzalez and confirmed that he told Gonzalez "exactly what tasks to undertake every day."[32] In *Melancon v. Amoco*, the Fifth Circuit found the fact that the

---

[27] *Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir. 1969).
[28] *Id.* at 312.
[29] *Ruiz*, 413 F.2d at 313 (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909).
[30] Rec. Doc. 85-1, p. 6.
[31] Rec. Doc. 85-10, p. 5, lines 1-11.
[32] Rec. Doc. 98-4, pp. 24-25, lines 14-1.
50871

plaintiff "took orders only from Amoco personnel who told him what work to do, and when and where to do it,"[33] weighed in favor of borrowed employee status. Similarly, the summary judgment evidence in this case shows that Richard Adams had authoritative direction and control over Gonzalez's work.

Plaintiffs cite Gonzalez's training as a qualified welder prior to working at the Trinity Marine facility as evidence that Gonzalez worked independently. Plaintiffs further point to testimony of Trinity Marine's human resource director that "each worker is empowered to do what they've been trained to do."[34] However, faced with similar facts in *Melancon*, the Fifth Circuit found "[t]he fact that [the plaintiff] had specialized welding skills he utilized in most of his work and none of Amoco personnel had similar welding expertise does not bar a finding of 'borrowed employee' status."[35] Likewise, the fact that Gonzalez was a trained welder prior to working at the Trinity facility does not preclude a finding of borrowed employee status.

Plaintiffs also contend that, because Gonzalez's supervisors "took four or five minutes" to locate Gonzalez after hearing a scream, Gonzalez worked without the direction of Trinity Marine personnel.[36] However, proximity of a worker's supervisors is not a factor outlined by the Fifth Circuit in *Ruiz*. The fact that Trinity Marine supervisors took four or five minutes to locate a worker located under a barge is not probative of whether Trinity Marine controlled Gonzalez's work.

---

[33] *Melancon,* 834 F.2d at 1245.
[34] Rec. Doc. 98-3, p. 65, lines 11-23 (Deposition of Robert Fogleman, Trinity Marine HR Director).
[35] 834 F.2d 1238, 1245 (5th Cir. 1988).
[36] Rec. Doc. 98, p. 3.
50871

Finally, Plaintiffs argue that, because Gonzalez's welding supervisors were unsure of the exact name of their employer, there exists a genuine issue of material fact. Trinity Marine welding supervisors, Vernal Washington ("Washington") and Adams, expressed uncertainty in their depositions regarding whether "Trinity Marine" or "Trinity Industries" was their employing entity. Plaintiffs argue that, based on this testimony, "there are genuine issues of material fact as to whether a 'Trinity' entity controlled [Gonzalez] at all," and whether Trinity Marine was the entity that exercised this control.[37] Plaintiffs highlight the following portion of Adams's testimony:

> Q: Understood. And so before that, you worked for, is it Trinity Marine Products, Trinity Marine Services, one of the Trinity entities?
> A: Diamond Plastics.
> Q: Okay. And before that?
> A: Trinity Marine.
> Q: Which particular Trinity entity employed you?
> A: What do you mean?
> Q: Was it Trinity Marine Products? Was it Trinity Marine Services, Trinity Industries?
> A: Trinity Industries.[38]

Although Adams initially indicated Trinity Marine as his employer, the line of questioning, albeit confusing, elicits an uncertain response. The record demonstrates that the facility where the accident occurred was originally purchased by "Trinity J, Inc."[39] Trinity J, Inc.'s name was changed by the board of directors to "Trinity Marine Port Allen, Inc."[40] Finally, Trinity Marine Port Allen, Inc. was merged with Trinity Marine Products,

---

[37] Rec. Doc. 98, p. 5.
[38] Rec. Doc. 98-4, pp. 8-9, lines 22-8 (Deposition of Richard Adams).
[39] Rec. Doc. 119-1, p. 1 (Act of Sale).
[40] *Id.* at 6 (Certificate of Amendment of Certificate of Incorporation).

Inc.[41] As evidenced by the United States Securities and Exchange Commission's ("SEC") annual report, Trinity Marine Products, Inc. is a subsidiary of Trinity Industries, Inc.[42]

Citing a newspaper article,[43] Trinity Marine argues that, "since Trinity Marine was the owner of the Brusly facility and the entity that announced a closing of its Brusly facility, this unequivocally establishes that Trinity Marine was Adams's and Washington's employer."[44] Although Adams and Washington certainly controlled Gonzalez's work, the evidence of which Trinity entity employed Gonzales's supervisors is unclear. Trinity Marine's corporate representative suffered the same confusion, incorrectly stating it was "Trinity Industries Services, LLC."[45]

In *U.S. Fire Ins. Co. v. Miller*, the Fifth Circuit found that "any work done by any employee of [the subsidiary] would be to the benefit of the intermediate holding company (and, by extension, the parent corporation …) and to argue that the [holding company] was the real employer simply because of this is, essentially, a semantic attempt to confuse."[46] Here, although the Court finds the distinction between Trinity Marine Products, Inc. and Trinity Industries, Inc. ("Trinity Industries") to be similarly semantic, it is material to the Court's instant analysis. According to the Fifth Circuit, "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its

---

[41] *Id.* at 8 (State of Delaware Office of the Secretary of State Certificate of Merger).
[42] Rec. Doc. 143-8, p. 4 (SEC From 10-K Annual report Pursuant to Section 13 or 15d of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2014 for Trinity Industries, Inc.).
[43] Rec. Doc. 119-2 (Timothy Boone, Trinity Marine announces 288 job shut down at Brusly plant, The Advocate, Sep. 13, 2016).
[44] Rec. Doc. 119, p. 3.
[45] Rec. Doc. 98-2, p.10 (Deposition of Michael Stripe, Trinity Marine Products, Inc., corporate representative).
[46] 381 F.3d 385 (5th Cir. 2004).
50871

subsidiary's employees."[47] Because the record is not clear whether the parent company or subsidiary controlled Gonzalez's work in this case, there exists a genuine issue of material fact as to the first factor of control.

### 2) Whose work being performed

This factor examines whose work was being performed by the employee in question. Although Trinity Marine owned the Brusly facility, there is a genuine factual dispute concerning which Trinity entity's work was being performed, Trinity Marine's or Trinity Industries'. Although the evidence strongly suggests that Gonzalez was performing Trinity Marine's work, the conflicting testimony referencing Trinity Industries and Trinity Marine creates a genuine issue of material fact that cannot be resolved on the current record.

### 3) Agreement between the original and the borrowing employer

The Parties have submitted a copy of the Master Service Agreement ("MSA") between NSC and Trinity.[48] The MSA was entered into by Trinity Industries, Inc., "for itself and its affiliated legal entities."[49] Again, Trinity Industries, Inc. is the parent company to Trinity Marine Products, Inc. The MSA states that NSC "reserve[s] the right of direction and control over all assigned [NSC] employees furnished to [Trinity Industries, Inc. and its affiliated legal entities]."[50] Although the language appears to contractually prevent a borrowed employee finding, "[t]he reality at the worksite and the parties' actions in carrying out a contract, however, can impliedly modify, alter, or waive express contract

---

[47] *LeBlanc v. AEP Elmwood LLC*, 946 F.Supp.2d 546 (E.D. La. 2013)(quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773,778 (5th Cir. 1997).
[48] Rec. Doc. 85-7 (MSA between NSC Technologies and Trinity).
[49] *Id.*
[50] Rec. Doc. 85-7, p.1.
50871

provisions."[51] NSC's corporate representative testified that NSC welders, like Gonzalez, "worked under the sole direction of Trinity Marine."[52] Further, Adams testified having "full control" over Gonzalez's work. Accordingly, the reality at the worksite evidenced from the record strongly suggests that, despite the MSA, NSC intended to relinquish control of Gonzalez to Trinity. However, as previously discussed, the reality of which Trinity entity was controlling Gonzalez at the Brusly facility is unclear. Despite this factor weighing in favor of borrowed employee status, a genuine issue of fact remains regarding which Trinity entity this factor weighs in favor of.

4) <u>Did the employee acquiesce in the new work situation?</u>

This "focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them."[53] There is no summary judgment evidence that Gonzalez did not acquiesce to working at the Brusly facility. To the contrary, Gonzalez's supervisors testified that Gonzalez understood his working situation, and they were satisfied with his work. Although Plaintiffs take issue with the fact that Adams could not speak Spanish, the record demonstrates that Adams was nonetheless able to communicate with Gonzalez. Plaintiffs offer no other evidence that would demonstrate that Gonzalez was not aware of his working conditions. However, considering the general lack of evidence concerning this factor, the Court finds that this factor is neutral.

5) <u>Did the original employer terminate his relationship with the employee?</u>

"This factor does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the 'borrowed

---

[51] *Melancon*, 834 F.2d at 1245.
[52] Rec. Doc. 85-10, p. 5, lines 1-11.
[53] *Brown v. Union Oil Co.*, 984 F.2d 674, 678 (5th Cir. 1993).
50871

employee' doctrine."[54] "The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs."[55] NSC's corporate representative stated that Gonzalez was under the sole direction of Trinity, and all work was determined by Trinity.[56] However, NSC personnel were able to talk to NSC employees at the Brusly facility, and it appears that NSC had the power to reassign Gonzalez.[57] In *Brown v. Union Oil Co. of California*, the Fifth Circuit found that the plaintiff's nominal employer had the right to take the plaintiff off the platform if the nominal employer needed him elsewhere.[58] There, the court found the nominal employer had not relinquished full control over the plaintiff and further found that this factor did "not overwhelmingly favor borrowed employee status." Faced with similar facts here, the Court finds that this factor does not overwhelmingly favor borrowed employee status; rather, this factor is neutral.

6) <u>Who furnished the tools and the place of performance?</u>

According to NSC's corporate representative, "Trinity Marine provided the welding equipment,"[59] and NSC initially provided boots, helmets, goggles, and gloves.[60] If needed, the record demonstrates that Trinity would provide replacements. Trinity also provided the place of performance. The Court finds this factor supports borrowed employee status.

---

[54] *Melancon*, 834 F.2d at 1246 (citing *Capps v. N.L. Baroid-NL Industries*, 784 F.2d at 617-18 (5th Cir. 1986)).
[55] *Capps v. N.L. Baroid-NL Industries*, 784 F.2d 615, 618 (5th Cir. 1986).
[56] Rec. Doc. 85-10, p. 5, lines 1-12. (Deposition of Chester Hall, NSC's corporate representative).
[57] Rec. Doc. 98-6, p. 27, lines 15-17.
[58] 984 F.2d 674, 679 (5th Cir. 1993).
[59] Rec. Doc. 85-10, p. 6, lines 8-9.
[60] Rec. Doc. 98-6, p. 65, lines 15-25 (Deposition of Chester Hall, NSC's corporate representative).
50871

7) <u>Was the new employment over a considerable length of time?</u>

Gonzalez worked at the Brusly facility for approximately three and half weeks before the fatal accident.[61] In *Capps v. N.L. Baroid-NL Industries*, the Fifth Circuit noted that, "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true."[62] There, the plaintiff's injury occurred on his first day of work, and the Fifth Circuit found that this factor was neutral. In *Theophile v. Trinity Industries, Inc.*, the plaintiff was injured after two weeks on the job but the court found that testimony indicating an expectation of continued employment weighed in favor of borrowed employee status.[63] However, courts have debated what constitutes a "considerable" length of time. In *Brown*, the Fifth Circuit found an employment duration of one month to be neutral.[64]

Here, Gonzalez was working for three and a half weeks, but his supervisors at the Brusly facility testified that they intended to keep him as long as possible.[65] The Court finds that, in light of previous holdings, this factor is neutral.

8) <u>Who had the right to discharge the employee?</u>

"[W]here the borrowing employer … has the right to terminate the borrowed employee's services with the borrowing employer, even though the borrowing employer does not have the right to terminate the borrowed employee's position with the nominal employer …, the right to discharge factor is satisfied."[66] Here, Chester Hall, on behalf of

---

[61] Rec. Doc. 85-13, p. 2.
[62] 784 F.2d at 618.
[63] 977 F.Supp. 782 (E.D. La. 1997).
[64] 984 F.2d 674 (5th Cir. 1993).
[65] Rec. Doc. 85-8, p. 20, lines 10-15; Rec. Doc. 85-9, p.31, lines 4-7.
[66] *Robertson v. W&T Offshore, Inc,* 712 F. Supp. 2d 515, 534 (W.D. La. 2010); *see Melancon*, 834 F.2d at 1246.
50871

NSC, testified that if Trinity no longer wanted an NSC employee, Trinity could end the NSC employee's assignment.[67] Further, emails between Trinity and NSC demonstrates Trinity's ability to terminate NSC employees from working at the Brusly facility.[68] Accordingly, this factor weighs in favor of borrowed employee status.

9) <u>Who had the obligation to pay the employee?</u>

Robert Fogleman, Human Resource director for Trinity Marine, explained that NSC "would bill Trinity Marine Products in an invoice," and NSC would disburse the paycheck to their specific employee.[69] "Where the nominal employer bills the borrowing employer for the services the borrowed employee provides, the obligation to pay requirement is met."[70] Thus, this factor weighs in favor of borrowed employee status.

---

[67] Rec. Doc. 98-6, p. 125, lines 5-14 (Deposition of Chester Hall, NSC corporate representative).
[68] Rec. Doc. 85-14 (Emails from Trinity Marine terminating NSC workers).
[69] Rec. Doc. 98-3, p. 38, lines 1-12 (Deposition of Robert Fogleman, Trinity Marine's HR Director).
[70] *Hotard v. Devon Energy Corp., L.P.,* 2008 WL 2228922 (W.D. la. 2008), aff'd*, Hotard v. Devon Energy Prod. Co. L.P.*, 308 F. App'x 739 (5th Cir. 2009).

### III. CONCLUSION

Although the *Ruiz* factors support borrowed employee status, and despite Trinity Marine's strong position, there is a genuine issue of material fact concerning whether Trinity Industries, Inc. or Trinity Marine Products, Inc. controlled Gonzalez. Accordingly, the *Motion for Summary Judgment*[71] filed by Trinity Marine and adopted by Liberty Mutual Insurance Company[72] and Navigators Insurance Company[73] shall be DENIED, reserving to the parties the right to re-urge a summary judgment motion. Any motion for summary judgment shall be filed on or before August 5, 2019.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 29, 2019</u>.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[71] Rec. Doc. 85.
[72] Rec. Doc. 96.
[73] Rec. Doc. 97.
50871